[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12267
Non-Argument Calendar
_____

D. C. Docket No. 1:11-cv-00894-WHA-CSC


DENNIS HALL,
MARY GLANTON, et al.,

                                                    Plaintiffs-Appellants,

versus

DOUGLAS ALBERT VALESKA,

                                                    Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(December 31, 2012)


Before MARCUS, KRAVITCH and EDMONDSON, Circuit Judges.


PER CURIAM:

    Plaintiffs Dennis Hall, Mary Glanton, Samuel Jackson, Vicky Allen Brown,

and Freddie B. Russaw ("Plaintiffs") -- African-American residents of Houston or Henry Counties, Alabama, who have been excluded from jury service through the use of peremptory strikes -- appeal the dismissal of their lawsuit against Douglas Valeska, the District Attorney of Houston and Henry Counties,[1] for failure to state a claim.  No reversible error has been shown; we affirm.

In their complaint, Plaintiffs -- on behalf of themselves and a class of those similarly situated -- alleged that Valeska was engaged in a pervasive and ongoing practice of excluding qualified African-Americans from serving as jurors in serious felony cases.  Plaintiffs asserted five claims: (1) a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause, (2) a claim for violation of 18 U.S.C. § 243, (3) a claim for violation of the Alabama Constitution, (4) a claim for violation of Alabama state law, and (5) a claim for attorneys' fees and costs under 42 U.S.C. § 1988.[2]

Plaintiffs sought declaratory judgment and injunctive relief.  They also sought an order requiring Valeska to maintain records and data about (1) the racial

---

[1]Plaintiffs also listed as defendants various unnamed Assistant District Attorneys who work under Valeska's direction and supervision.  Our analysis of Plaintiffs' claims against Valeska applies with equal force to the claims against those unnamed defendants.

[2]On appeal, Plaintiffs do not challenge the district court's dismissal of their state law claims or their claim for attorneys' fees and costs; so those claims are abandoned.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

composition of the jury pool in each serious felony case, (2) the race of all venire members stricken for cause or by peremptory strike, (3) the names of all cases in which Batson[3] violations are alleged, and (4) the identity of all attorneys involved in cases in which Batson violations are alleged.  Plaintiffs asked that Valeska be required to file written reports every six months with a court-appointed monitor. Plaintiffs also sought an order ensuring Plaintiffs "meaningful access to and monitoring of jury selection in serious felony cases with notice of the empaneling of juries in such cases and an opportunity for oversight and intervention if Defendants' discrimination continues."

The district court granted Valeska's motion to dismiss.  Relying on the principles set forth in O'Shea v. Littleton, 94 S.Ct. 669 (1974), the district court abstained from consideration of and dismissed Plaintiffs' Equal Protection claim. The district court then dismissed Plaintiffs' claims under section 243 and for attorneys' fees, and the court declined to exercise supplemental jurisdiction over Plaintiffs' state law claims.

On appeal, Plaintiffs challenge the district court's dismissal of their Equal Protection claim.  "We review an abstention decision only for an abuse of discretion." 31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003).

---

[3]Batson v. Kentucky, 106 S.Ct. 1712 (1986).

3

In the light of the teaching of O'Shea, the district court did not abuse its discretion when it concluded that the declaratory and injunctive relief sought by Plaintiffs was prohibited. In O'Shea, plaintiffs complained that the county magistrate and judge had engaged in an ongoing pattern and practice of applying the state criminal laws and procedures in a racially discriminatory manner. The O'Shea plaintiffs sought to enjoin the alleged conduct from occurring in future criminal trials. O'Shea, 94 S.Ct. at 674. The Court of Appeals concluded that injunctive relief -- including a requirement for periodic data reports -- might be appropriate. Id. at 674 n.1.

The Supreme Court reversed, explaining that such an order "seems to us nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that Younger v. Harris, [91 S.Ct. 746 (1971)], . . . sought to prevent." Id. at 678. The Court said that such "periodic reporting" "would constitute a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity." Id. at 679. Moreover, such an injunction "would disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim ab initio." Id. The Court warned that "[a] federal court should not intervene

to establish the basis for future intervention that would be so intrusive and unworkable." Id. at 678.

Like the plaintiffs in O'Shea, Plaintiffs seek an injunction to control conduct that might occur in future state criminal trials. And, as a mechanism for enforcing that injunction, Plaintiffs ask the district court to impose a periodic reporting requirement on Valeska which would be supervised by a federal court-appointed monitor. This request implicates directly the concerns expressed in the O'Shea opinion.

In addition -- as in O'Shea -- federal intervention would be required each time a member of Plaintiffs' proposed class alleged a violation of the injunction. In fact, Plaintiffs' complaint contemplates such federal intervention by requesting expressly an order ensuring Plaintiffs the opportunity to intervene if Valeska's discrimination continues and asking the court to retain jurisdiction until its order has been implemented fully. This kind of relief would be extremely intrusive on the state courts and the administration of state law.

Plaintiffs argue that, because individual jurors are not parties to the criminal proceeding from which they are excluded, enforcement of the injunction would not interfere with individual state criminal cases. Even if that proposition is true, enforcement of the injunction might -- as Plaintiffs themselves suggest -- involve

5

holding Valeska in contempt, which would again raise concerns under O'Shea and Younger.  See Luckey v. Miller, 976 F.2d 673, 679 (11th Cir. 1992) (explaining that abstention was appropriate, in part "if, at the end of protracted litigation, a compliance problem arose which would force abstention on the same ground that existed prior to trial.").  We are also unpersuaded by Plaintiffs' argument that abstention is inappropriate where no pending state proceeding exists.  See id. at 677 (rejecting a similar argument because the proposed injunction -- which would require the state's governor and judges to increase services for indigent defendants -- "would, inevitably, interfere with every state criminal proceeding.").

Contrary to Plaintiffs' argument, Carter v. Jury Comm'n of Greene Cnty., 90 S.Ct. 518 (1970), and Ciudadanos Unidos de San Juan v. Hidalgo Cnty. Grand Jury Comm'rs, 622 F.2d 807, 830 (5th Cir. 1980), do not control this case.  Both Carter and Ciudadanos are distinguishable because they involved challenges to the alleged systematic and unilateral exclusion of racial groups from jury rolls by officials charged with the administration of the state's jury-selection laws. Plaintiffs, on the other hand, challenge the discretionary use of peremptory strikes during judicial proceedings -- strikes which may be objected to, ruled on contemporaneously, and subjected to appellate review.  We see no abuse of

6

discretion and affirm the district court's dismissal of Plaintiffs' Equal Protection claim.

Plaintiffs also argue that the district court erred in concluding that 18 U.S.C. § 243 did not provide a private right of action. Whether a statute provides a private right of action is a question of statutory construction that we review de novo. Touche Ross & Co. v. Redington, 99 S.Ct. 2479, 2285 (1979); Dionne v. Floormasters Enters., 667 F.3d 1199, 1203 (11th Cir. 2012).

In interpreting a statute, we must begin with the statutory language itself. Touche Ross & Co., 99 S.Ct. at 2285. And we must determine whether that language "displays an intent to create not just a private right but also a private remedy." Alexander v. Sandoval, 121 S.Ct. 1511, 1519 (2001). Where no Congressional intent to create a private remedy exists, no private remedy exists. Id. at 1519-20.

Section 243 contains this language:

No citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color, or previous condition of servitude; and whoever, being an officer or other person charged with any duty in the selection or summoning of jurors, excludes or fails to summon any citizen for such cause, shall be fined not more than $5,000.

18 U.S.C. § 243.

7

The plain text of section 243 does not provide for a private right of action. Nor does it suggest that Congress intended to create a private right of action. Instead, the statutory language demonstrates that Congress intended the statute to be enforced through the imposition of criminal fines.  Because section 243 does not provide for a private right of action, the district court properly dismissed Plaintiffs' claim.

AFFIRMED.