# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 16, 2021

Lyle W. Cayce
Clerk

No. 20-60372

Scott Crawford,

*Plaintiff—Appellant*,

*versus*

Hinds County Board of Supervisors;
Hinds County, Mississippi,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Mississippi
No. 3:17-CV-118

Before Smith and Ho, *Circuit Judges*, and Barker, *District Judge*.*

Jerry E. Smith, *Circuit Judge*:

Scott Crawford needs a wheelchair to move about. After being unable to serve on a jury in part because of the architecture of the Hinds County Courthouse, he sued for injunctive relief under the Americans with Disabilities Act ("ADA"). The district court dismissed for lack of standing, holding it was too speculative that Crawford would, among other things, again be

---

* District Judge of the Eastern District of Texas, sitting by designation.

No. 20-60372

excluded from jury service.  We reverse and remand.

I.

Crawford uses a wheelchair because of multiple sclerosis.  In 2006, he moved to Hinds County, Mississippi, where his family lives, so that they could help him manage his disability.  Between 2006 and the time he filed his complaint in 2017, Crawford twice was called for jury duty and twice faced obstacles in being able to serve on a jury.

The first time, Crawford encountered his initial obstacle when entering the building.  The main entrance was not wheelchair-accessible, and the side entrance door was too heavy to be opened easily by a person in a wheelchair.  Once in the building, Crawford realized that the public rest-rooms are not handicap-accessible, forcing Crawford, who was wearing incontinence undergarments, to relieve himself in his pants.  When Crawford returned the next day, the bailiff was able to take him to a restroom large enough to accommodate his wheelchair, but it was through "several locked doors."

Finally, in the actual courtroom, there was no clear space for Crawford to sit in his wheelchair; there was no cutout in the benches, and the aisle was too narrow for him to sit there without blocking others.  Crawford was also unable to approach the bench to speak with the judge because "a six-inch step separated the gallery from the bar/bench area."  Because the jury box was located beyond that step, it would have made it more difficult for Crawford to access the jury box.  In part because of these problems, and in part because of the limited amount of time Crawford can spend in his wheelchair, he recognized that he would not be able to serve on the jury unless it was a short trial.  Because he could not approach the judge, he told that to the bailiff, who told the judge, and Crawford was excused from jury duty.

At that point, Crawford began working with the county to make the

No. 20-60372

courthouse accessible. He and his colleagues from Living Independence for Everyone went with county officials to survey the courthouse and report accessibility barriers. According to the survey they completed, most of the courtrooms in that courthouse have accessibility problems of one sort or another that would make jury service difficult for Crawford. Crawford spoke with the Hinds County Board of Supervisors and urged them to hire an ADA coordinator, which they did. The county officials assured him they would make at least two of the courtrooms ADA-compliant as soon as possible.

But by the time Crawford was called for jury duty again three years later, no progress had been made. The building entrance,[1] restrooms, and courtrooms had the same accessibility problems they had in 2012. In his deposition, Crawford said it was clear to him that the jury area was still not accessible; he was again excused from jury service.

Crawford sued for injunctive relief under Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, and for damages under the Rehabilitation Act, 29 U.S.C. § 794a. Before trial, however, the parties settled the claim for damages under the Rehabilitation Act, so only the claim for injunctive relief under the ADA remained. The district court initially found that Crawford had standing, so it proceeded to hold a bench trial.

Following the bench trial, the district court concluded, based on the problems with the architecture of the restrooms and courtrooms, that

> plaintiff has proven that jury service is not accessible to disabled individuals at the Hinds County Courthouse. Plaintiff has demonstrated that there are no readily accessible restrooms for wheelchair users and that various architectural barriers in most, if not all, of the eight courtrooms impede ready access by

---

[1] Sometime after Crawford's 2015 jury duty, the side door to the building was replaced with automatic doors, eliminating that obstacle.

No. 20-60372

wheelchair users to program areas.  The County's position that
there was no lack of program access as plaintiff was able to fully
participate in jury service is not well-founded.

But the court also reconsidered its previous ruling on standing and held that
Crawford did not have standing for injunctive relief because, *inter alia*, the
possibility of future jury service was too speculative to support standing.[2]
Crawford appealed.

## II.

Title II of the ADA says that "no qualified individual with a disability
shall, by reason of such disability, be excluded from participation in or be
denied the benefits of the services, programs, or activities of a public entity,
or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.
Jury service is one such program contemplated by Title II.  *See Tennessee v.
Lane*, 541 U.S. 509, 527 (2004).  No party suggests otherwise.  The question
is whether the possibility that Crawford will be called for and excluded from
jury service in the future is too speculative to support standing for injunctive
relief.  Our review of that question is *de novo*.  *Deutsch v. Annis Enters., Inc.*,
882 F.3d 169, 173 (5th Cir. 2018) (per curiam).  Because the district court
found the plaintiff lacked standing after only a bench trial, our review of its
factual findings is for clear error.  *Id.*

"To establish standing under Article III of the Constitution, a plaintiff
must demonstrate (1) that he or she suffered an injury in fact that is concrete,
particularized, and actual or imminent, (2) that the injury was caused by the

---

[2] The district court also held that Crawford did not establish either that he intended
to continue going to the courthouse specifically to test for ADA compliance or that he
intended to return to the courthouse for other purposes.  Crawford did not appeal the first
alternate holding, and because we find standing through another route, we have no occasion
to opine on the second.

defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020). "[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019).

That threatened future injury "must be an injury in fact." *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). That means, as relevant here, that the injury must be "'imminent' . . . 'to ensure that the alleged injury is not too speculative for Article III purposes.'" *Id.* at 721 (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013)). "For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur." *Id.* (quoting *Susan B. Anthony List*, 573 U.S. at 158). "[P]ast wrongs [are] evidence" of the likelihood of a future injury but "do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 (1983).

We have twice opined about when the possibility of future exclusion from jury service is sufficient to support standing. First, in *O'Hair v. White*, 675 F.2d 680, 691 (Former 5th Cir. 1982) (en banc), we examined whether an individual plaintiff had standing for injunctive relief from a provision of the Texas Constitution requiring that jurors "swear to [their] belief in a supreme being." We reasoned that the plaintiff is "aggrieved by being excluded from jury duty because of her lack of religious belief" and "clearly has standing to challenge that system." *Id.*

Ten years later, we decided *Society of Separationists, Inc.*, *v. Herman*, 959 F.2d 1283 (5th Cir. 1992) (en banc). The plaintiff refused to take either an oath to tell the truth or "an affirmation [to do so] without any recognition or any statement, any reference to God or anything of that nature." *Id.*

at 1284 (internal quotation marks omitted). The plaintiff insisted that she considered an affirmation to be a religious statement. *Id.* "The judge did not ask [the plaintiff] what form of assurance of truthfulness would meet her objections, and [the plaintiff] offered none." *Id.* The plaintiff sought injunctive relief enjoining Judge Herman and other judges from requiring an oath or affirmation. *Id.* at 1285. We decided the plaintiff did not have standing because she could not "show a real and immediate threat that she will again appear before Judge Herman as a prospective juror and that Judge Herman will again exclude her from jury service." *Id.* We reasoned that because "[t]here are over half a million residents in Travis [C]ounty and twenty trial judges," "[t]he chance that [the plaintiff] will be selected again for jury service and that Judge Herman will be assigned again to oversee her selection as a juror is slim." *Id.*

We distinguished *O'Hair* because there the plaintiff had challenged a state law, which "presented an ongoing threat to [the plaintiff's] right not to be excluded from jury service." *Id.* at 1287. In *Herman*, on the other hand, "the judge was not acting pursuant to any state or local rule or statute, or even some personal policy, when he failed to ask [the plaintiff] if there were alternative ways in which she would be willing to commit herself to tell the truth." *Id.* at 1286. That indicated the issue was "inherently contextual and episodic" and thus did not present an ongoing threat. *Id.*

*O'Hair* and *Herman* can be summarized as holding that a plaintiff with a substantial risk of being called for jury duty has standing to seek an injunction against a systemic exclusionary practice but not a one-off, episodic exclusion related to a particular judge's actions. Thus, the plaintiff in *O'Hair* had standing for injunctive relief against a state constitutional provision that systemically excluded atheists from jury service, but the plaintiff in *Herman*

lacked standing for injunctive relief against a particular judge's conduct.[3]

Per that rule, Crawford has standing to seek injunctive relief. He has a substantial risk of being called for jury duty again. He was called twice between 2012 and 2017. Those past incidents, though insufficient to confer standing, are still "evidence bearing on whether there is a real and immediate threat of repeated injury." *Lyons*, 461 U.S. at 102 (internal quotation marks omitted). Moreover, Hinds County is not extremely populous, and only a subset of its population is eligible for jury service, so it's fairly likely that Crawford will again, at some point, be called for jury duty. It is true that we cannot say with certainty when, precisely, Crawford will again be called, but "'imminence' is an 'elastic concept'"[4] that can accommodate that uncertainty.

The architectural barriers Crawford claims prevented his serving on a jury duty amount to a systemic exclusion. The district court found that the "plaintiff has proven that jury service is not accessible to disabled individuals at the Hinds County Courthouse." The county has given us no reason not to accept the district court's finding of fact on that issue.[5] Given that finding, the architectural barriers, like the statute at issue in *O'Hair*, present an "ongoing threat to [Crawford's] right not to be excluded from jury service." *Herman*, 959 F.2d at 1288. They are therefore a systemic exclusion, not a one-off episodic one.

The decision in *Hummel v. St. Joseph County Board of Commissioners*,

---

[3] *Herman* also reflects our reluctance "to superintend state judges." *Herman*, 959 F.2d at 1286.

[4] *Frame v. City of Arlington*, 657 F.3d 215, 235 (5th Cir. 2011) (en banc) (quoting *Lujan*, 504 U.S. at 564 n.2).

[5] In fact, at oral argument, Hinds County conceded this finding was not clearly erroneous.

No. 20-60372

817 F.3d 1010, 1021 (7th Cir. 2016), is not to the contrary. Though the Seventh Circuit held that the *Hummel* plaintiffs did not have standing to challenge the ADA-noncompliance of juror facilities, those plaintiffs were situated differently from Crawford. Those plaintiffs offered "no concrete evidence that [they] ha[d] already been or likely will be called as jurors." *Id.* Crawford, on the other hand, was called for jury duty twice before filing suit[6] and offered evidence regarding the likelihood of his being called again given the size of Hinds County.

We REVERSE the judgment in favor of defendants and REMAND for further proceedings. We place no limitations on how the district court should proceed or on what decisions it should make.

---

[6] Which, though not itself an injury supporting injunctive relief, is "evidence" of the likelihood of that injury's being repeated. *Lyons*, 461 U.S. at 102, 103.

No. 20-60372

James C. Ho, *Circuit Judge*, concurring:

I concur. I write separately to offer an additional reason why the plaintiff has standing to seek injunctive relief.

Scott Crawford has been called for jury duty four times to date—in 2012, 2015, 2018, and 2019. Each time, he was unable to serve due to the defendants' failure to accommodate his disability. Four injuries over seven years evinces a pattern that demonstrates a likelihood that Crawford will continue to suffer similar injuries in the future. *See*, *e.g.*, Ian Fleming, Goldfinger 222–23 (1959) ("Once is happenstance. Twice is coincidence. Three times is enemy action.").

If Crawford had brought suit in 2020, there would be no doubt about his standing to seek injunctive relief under the Americans with Disabilities Act. The question on appeal is whether he has standing given that he brought this suit in 2017. That is, we must decide whether, for purposes of determining standing, we are allowed to consider his post-filing jury summonses in 2018 and 2019.

Two bedrock principles of standing govern this case. First, standing to seek injunctive relief depends on whether the plaintiff is "likely to suffer future injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Second, "[t]he existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (plurality opinion) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)).

Accordingly, a plaintiff cannot establish standing based on an injury that it did not "anticipate[] . . . at the time it filed the complaint." *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005). *See also In re Technicool Sys., Inc.*, 896 F.3d 382, 386 (5th Cir. 2018) ("Furlough asserts he has standing because he is *now* a creditor. But this argument proves too little,

1

too late. Now matters not. . . . Furlough cannot . . . establish standing retroactively.").

Crawford's theory of standing complies with these established principles. After all, his alleged future injury at the time he brought suit is simply this: Based on the population of his county, he could expect to be called to jury duty on a regular basis—but would not be allowed to participate due to the county's lack of accommodations for his disability.

So when Crawford points to his 2018 and 2019 jury summonses, he is not presenting a new injury that did not threaten him until after he filed suit. Rather, he is producing further evidence to confirm the existence of a threat present when he filed suit. (Likewise, evidence that the county had *failed* to issue him a single jury summons in the four years since 2017 would tend to negate his claim of likely future injury at the time of suit. Such evidence would tend to suggest that his 2012 and 2015 jury summons were merely a coincidence, and not a pattern.)

I see no reason why we should treat this 2017 suit any differently than we would treat the hypothetical 2020 suit. In either case, Crawford has presented evidence of a sufficient threat of future injury at the time of suit to establish standing for injunctive relief.

Accordingly, I concur.