# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 16, 2023

Lyle W. Cayce
Clerk

No. 22-50828

Philip C. James; John Ballantyne; William Noe,

*Plaintiffs—Appellees*,

*versus*

Glenn Allen Hegar, Jr., *in his individual and official capacities as Texas Comptroller of Public Accounts, and his official and custodial capacities as Chairman of the Texas Treasury Safekeeping Trust Company and administrator of* Texas Unclaimed Property Funds; Joani Bishop, *in her individual and official capacities as Director of Unclaimed Property Reporting and Compliance, Texas Comptroller of Public Accounts*,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:22-CV-51

_____

Before King, Willett, and Douglas, *Circuit Judges*.

King, *Circuit Judge*:

Plaintiffs are three Texas residents whose assets escheated to the State under Texas's Unclaimed Property Act. Plaintiffs brought a class action lawsuit against the Texas Comptroller and a director in the Comptroller's office, alleging that the State is abusing the Unclaimed Property Act to seize purportedly abandoned property without providing proper notice. The

district court dismissed most of Plaintiffs' claims. However, applying the *Ex parte Young* exception to state sovereign immunity, the district court permitted Plaintiffs to seek prospective relief, including an injunction ordering state officials to comply with the Constitution's Takings and Due Process Clauses. In this interlocutory appeal, Defendants contend that Plaintiffs cannot invoke *Ex parte Young* because they lack standing to seek prospective relief and have not alleged an ongoing violation of federal law. We agree with Defendants and REVERSE the district court's denial of Eleventh Amendment sovereign immunity, and we REMAND with instructions to dismiss Plaintiffs' remaining claims for prospective relief without prejudice.

## I.

This case arises from alleged systemic and ongoing violations of Plaintiffs' constitutional rights by the State of Texas through its administration of the Texas Unclaimed Property Act ("UPA"), Tex. Prop. Code § 71.001 *et seq.* The UPA requires holders of presumptively abandoned property to report and deliver that property to the State Comptroller, along with last-known information about the property owner. *Id.* §§ 74.101, 74.301. "[P]roperty is presumed abandoned if, for longer than three years: (1) the location of the owner of the property is unknown to the holder of the property; and (2) according to the knowledge and records of the holder of the property, a claim to the property has not been asserted or an act of ownership of the property has not been exercised." *Id.* § 72.101(a).

The holder of the property is generally required to give notice to the owner at least 60 days before the property is delivered to the Comptroller. *Id.* § 74.1011(a). One year after the holder files a statutorily mandated report, the Comptroller "may use one or more methods as necessary to provide the most efficient and effective notice to each reported owner." *See id.* § 74.201.

No. 22-50828

When the Comptroller receives property in the form of unclaimed money, the Comptroller deposits the funds—as well as any income derived from investment of the unclaimed money—to the credit of the State's general revenue fund, where it is "subject . . . to appropriation by the legislature." *Id.* §§ 74.601(b), 74.603.

The Comptroller maintains a website that lists the names and last known addresses of owners whose property has been transferred to the Comptroller under the UPA. An owner whose property has been transferred to the State can file an administrative claim to recover the property with the Comptroller's office. *Id.* § 74.501; *Clark v. Strayhorn*, 184 S.W.3d 906, 910–11 (Tex. App.—Austin 2006, pet. denied). If the Comptroller determines that an owner's claim is valid, the Comptroller's office returns any unsold property or pays the claimant from the general revenue fund. Tex. Prop. Code §§ 74.501, 74.602. This payment does not include any interest that the claimant's funds generated before he or she filed a claim for recovery. *Id.* § 74.304(d); *Clark*, 184 S.W.3d at 913.

## II.

Plaintiffs-Appellees Philip C. James, William Noe, and John Ballantyne (collectively, "Plaintiffs") are three Texas residents who allege that their assets improperly escheated to the State under the UPA. Plaintiff James alleges that Charles Schwab & Co. closed his retirement account and transferred $305,203.56 from the account to the State as unclaimed property. James never received notice from the Comptroller's office, which denied having any record of the retirement funds purportedly transferred to its possession. He further claims that $188 of his funds were improperly seized by the Comptroller without notice, his knowledge, or consent.

Plaintiff Noe alleges that an amount of $468.72 was transferred from his accounts receivable credit balance with Reed Elsevier to the Comptroller.

Noe claims that, other than the posting of his property on the Comptroller's website, he received no notice of this transfer. Plaintiff Ballantyne alleges that his accounts with multiple holders, including IBC Bank, Chase Bank, Wells Fargo, and E-Trade, all improperly escheated to the State. He claims that the Comptroller failed to identify both the property type and the holders of his seized property.

Plaintiffs filed a class action complaint in federal district court on January 21, 2022. They named as defendants Glenn Allen Hegar Jr., the Texas Comptroller of Public Accounts, and Joani Bishop, the Comptroller's Director of Unclaimed Property Reporting and Compliance (collectively, "Defendants"). The complaint alleges that Defendants "misused" the UPA "to take private property from people and businesses without meeting the basic threshold requirements for escheatment because they ha[d] not 'abandoned' or 'lost' their property and they [were] not 'unknown.'" Defendants allegedly utilized the UPA to convert private property into revenue for the State, which they achieved by unlawfully coercing financial institutions, businesses, and nonprofits to surrender Plaintiffs' and class members' property to the Comptroller. The complaint proposed a class defined as "[a]ll persons or entities whose property was escheated to the State of Texas between 2014 and the present without adequate notice."

Based on the foregoing allegations, Plaintiffs asserted claims against Defendants in their individual and official capacities under 42 U.S.C. § 1983. Specifically, Plaintiffs sought a declaration that Defendants: (1) failed to provide notice and satisfy due process requirements under the UPA, the Texas Constitution, and the U.S. Constitution; (2) allowed and colluded with third parties to retain property that belonged to Texas citizens; (3) seized, sold, and destroyed contents of bank safety deposit boxes without adequate notice; (4) failed to enforce the requirement that corporations comply with the UPA; and (5) acted *ultra vires* in failing to provide notice and satisfy due

No. 22-50828

process. Plaintiffs additionally sought an accounting, attorneys' fees, the creation of a common fund, and injunctive relief in the form of ordering Defendants to: (a) comply with and properly administer the UPA; and (b) return Plaintiffs' property.

On April 14, 2022, Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In response to the claims against Defendants in their official capacities, Defendants invoked state sovereign immunity under the Eleventh Amendment. Defendants further claimed that Plaintiffs had failed to identify specific actions taken by either of the individual Defendants that would subject them to liability.

In an order dated September 6, 2022, the district court dismissed most of Plaintiffs' claims. Addressing Defendants' jurisdictional arguments, the district court determined that the State had not consented to being sued in federal court, and it dismissed Plaintiffs' requests for declaratory and injunctive relief under state law and the Texas Constitution for lack of subject matter jurisdiction. The district court also dismissed "Plaintiffs' claims against Defendants in their official and individual capacity to the extent those claims seek funds from the general revenue fund." Turning to Plaintiffs' individual-capacity § 1983 claims, the district court found that Plaintiffs failed to allege individual causation regarding each Defendant.

The district court noted that the only way for Plaintiffs' official-capacity claims to overcome sovereign immunity was through the *Ex parte Young* exception, which permits federal courts to enjoin state officials in their official capacities from violating federal law. *See Hutto v. Finney*, 437 U.S. 678, 690 (1978) (citing *Ex parte Young*, 209 U.S. 123 (1908)). The district court determined that the following two requests for relief could survive under *Ex parte Young*: (1) "prospective injunctive relief in the form of

ordering [Defendants] to comply with the Takings and Due Process Clauses of the Constitution"; and (2) a "declaration that Defendants violated the U.S. Constitution's requirements for due process of law and against takings." The district court accordingly granted in part and denied in part Defendants' motion to dismiss, solely permitting Plaintiffs to proceed with their requests for declaratory and injunctive relief under *Ex parte Young*. Defendants filed a notice of interlocutory appeal seeking review of the denial of Eleventh Amendment sovereign immunity.[1]

## III.

We first address our jurisdiction to review Defendants' interlocutory appeal. Orders denying Eleventh Amendment sovereign immunity are reviewable on interlocutory appeal under the "collateral order doctrine." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993). Defendants on appeal argue that Plaintiffs "have not alleged an ongoing violation of federal law," which is a necessary component of the *Ex parte Young* exception to Eleventh Amendment sovereign immunity. *See Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020).

In arguing that Plaintiffs failed to allege an ongoing violation, Defendants repeatedly cite legal standards governing Article III standing for prospective relief, specifically the well-established principle that "to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v.*

_____

[1] On interlocutory appeal, we solely address the district court's denial of Eleventh Amendment sovereign immunity concerning Plaintiffs' requests for: (1) an injunction ordering Defendants to comply with the U.S. Constitution; and (2) a declaratory judgment that Defendants violated the U.S. Constitution. We do not address the district court's dismissal of any of Plaintiffs' claims.

*Texas*, 341 F.3d 352, 358 (5th Cir. 2003). Thus, although the primary issue on interlocutory appeal is the district court's denial of Eleventh Amendment sovereign immunity under *Ex parte Young*, Defendants' briefing also raises the closely related issue of Plaintiffs' standing to seek prospective relief.

Standing is a component of subject matter jurisdiction, *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 627 (5th Cir. 2021), and where "we have interlocutory appellate jurisdiction to review a district court's denial of Eleventh Amendment immunity, we may first determine whether there is federal subject matter jurisdiction over the underlying case," *Hosp. House, Inc. v. Gilbert*, 298 F.3d 424, 429 (5th Cir. 2002). Because "our Article III standing analysis and *Ex parte Young* analysis 'significant[ly] overlap,'" *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (quoting *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)), we have in prior cases considered standing on interlocutory appeals of a district court's denial of Eleventh Amendment sovereign immunity, *see id.* at 1103 n.3; *see also, e.g.*, *Walker v. Livingston*, 381 F. App'x 477, 479 (5th Cir. 2010); *Williams v. Davis*, No. 22-30181, 2023 WL 119452, at *4–6 (5th Cir. Jan. 6, 2023).

Plaintiffs allege that they were subjected to constitutional violations, they allege that such violations are ongoing or may reoccur, and they seek prospective relief. Whether Plaintiffs have alleged ongoing constitutional violations is a central question of both the Article III standing analysis and the *Ex parte Young* analysis in this case. And, as discussed below, the most relevant authorities on "ongoing violations" as related to takings claims address this issue in the context of Article III standing. Because these authorities inform our analysis of "ongoing violations" in the context of *Ex parte Young*, we address standing before turning to an *Ex parte Young* analysis.

## IV.

This court may address the jurisdictional requirement of standing for the first time on appeal. *Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001). "Constitutional standing has three elements: (1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Although Plaintiffs in this case purport to act on behalf of a class, they must still demonstrate that they personally have standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016). Litigants must demonstrate standing with respect to each type of relief they seek. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021). To request prospective injunctive or declaratory relief, a litigant must demonstrate "continuing harm or a real and immediate threat of repeated injury in the future." *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992). The threat of future injury must be "*certainly* impending"; mere allegations of possible future injury will not suffice. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565 n.2).

The Supreme Court's holding in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), illustrates the principle that allegations of past harm cannot establish standing for a request for prospective relief. In *Lyons*, the plaintiff sought damages, an injunction, and declaratory relief following an incident in which police officers seized him and applied a chokehold. *Id.* at 97–98. The *Lyons* Court held that while the plaintiff had alleged a past harm resulting from being subjected to a chokehold, he was unable to seek prospective relief absent a showing that he was likely to suffer a future injury from the use of

chokeholds by police officers. *Id.* at 105. The plaintiff's allegation of past harm ultimately did "nothing to establish a real and immediate threat that he would again be stopped" and subjected to that method of restraint. *Id.*

This court has already applied the *Lyons* principle to an allegation of an unconstitutional taking under Texas's UPA. In *Arnett v. Strayhorn*, 515 F. Supp. 2d 690, 693 (W.D. Tex. 2006), *aff'd sub nom. Arnett v. Combs*, 508 F.3d 1134 (5th Cir. 2007), a plaintiff brought a facial challenge to the UPA, claiming that the State's retaining of revenue generated from unclaimed property violates the Takings Clause of the Fifth Amendment. In addition to seeking the return of revenue held by the State, the plaintiff also sought a declaratory judgment decreeing the UPA unconstitutional and an injunction prohibiting the State from retaining any such revenue generated by unclaimed property in the future. *Id.* The district court determined that the plaintiff lacked standing to assert a claim for prospective relief because he "[did] not, nor [did] the Court reasonably believe he [could], contend he [would] be likely to have property subject to the Texas Unclaimed Property Law in the future." *Id.* at 697–98. In *Arnett v. Combs*, 508 F.3d 1134, 1134 (5th Cir. 2007), this court affirmed *Arnett v. Strayhorn* for the reasons stated by the district court.

Like the plaintiff in the *Arnett* line of cases, Plaintiffs here have only alleged that they were injured by past takings; they allege no facts indicating that another taking of their property is imminent or certainly impending. Plaintiffs reference their fear of another unconstitutional taking, requiring them to "routinely inspect the contents of their safe deposit boxes, check on the presence of funds in their retirement accounts, and search the website administered by Defendants to see if they have taken any more of their property." But even if Plaintiffs take actions and incur costs out of fear of a future injury, these activities do not suffice to establish standing. *See Clapper*, 568 U.S. at 416 (rejecting the theory that plaintiffs can "manufacture

standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

Plaintiffs point to no authority supporting their assertion that an unconstitutional taking is an "ongoing violation" for the purpose of seeking prospective relief when the government has failed to return a claimant's property. In fact, the *Arnett* line of cases reaches the opposite conclusion—that a prior taking is a past harm insufficient to confer standing for prospective relief, even when it is alleged that the government has unlawfully retained assets that rightfully belong to the plaintiff. *See Arnett*, 515 F. Supp. 2d at 697–98. Here, the district court permitted Plaintiffs to proceed with their request for prospective relief to prevent the State from violating the Constitution in the future. But if Plaintiffs allege no impending future injury, this prospective relief in no way redresses Plaintiffs' alleged injuries. We therefore find that Plaintiffs' allegations of past unconstitutional takings are insufficient to confer standing for prospective relief under the principle enounced in *Lyons*.

## V.

We now turn to *Ex parte Young*. "In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court." *Paxton*, 943 F.3d at 997. Sovereign immunity applies to suits against state officials or agencies that are effectively suits against a state. *Id.* For the *Ex parte Young* exception to Eleventh Amendment sovereign immunity to apply, three criteria must be satisfied: (1) A plaintiff must name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation of federal law; and (3) the relief sought must be prospective, rather than retroactive. *Green Valley*, 969 F.3d at 471.

Our standing analysis makes clear that Plaintiffs have not demonstrated that they "seek prospective relief to redress ongoing

conduct." *See Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020). Just as Plaintiffs' allegations of past harm are insufficient to confer standing to seek prospective relief, these allegations are also insufficient to show an ongoing violation of federal law and invoke the *Ex parte Young* exception to Eleventh Amendment sovereign immunity. *See Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020) (finding that an allegation of wrongful past behavior does not establish a claim that falls within the *Ex parte Young* exception).

We are not persuaded by Plaintiffs' arguments that they have successfully pleaded ongoing constitutional violations to invoke *Ex parte Young*. Plaintiffs point out that their complaint alleges that Defendants "continue to violate" the Constitution by providing inadequate notice and performing unlawful takings. But the complaint contains insufficient facts to support Plaintiffs' claim that Defendants continue to perform unlawful takings with inadequate notice, and factual allegations contained in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' nonspecific references to Defendants continuing to engage in unlawful conduct are too vague and unsupported by factual allegations to demonstrate an ongoing violation under *Ex parte Young*. *See Williams*, 2023 WL 119452, at *6.

Plaintiffs also claim that their lawsuit is a facial challenge to the UPA, which would permit an inference of ongoing violations because there is no evidence in the record to suggest that the State will halt enforcement of the UPA. Plaintiffs' complaint, however, does not allege that the UPA is facially unconstitutional. The crux of Plaintiffs' complaint is that the State of Texas has "misused" and is "skirting the requirements of" the UPA. For instance, the complaint alleges that "Defendants failed . . . to provide . . . Constitutional *and statutorily* required notices before taking personal

property," and that "our State and Federal Constitutions *and the State's UPA laws* do not permit the seizure and sale of private property, for public use, without adequate notice and Due Process of Law." (emphases added). The complaint repeatedly asserts that Defendants' allegedly unconstitutional takings also violate the UPA; absent from the complaint is clear indication that Defendants commit unconstitutional takings even when they fully comply with the UPA's statutory process to the letter.

Plaintiffs' claim that their lawsuit is a facial challenge to the UPA is further undermined by the language of their requests for prospective relief. Plaintiffs seek a declaration that Defendants violated the Constitution *and* the UPA; there is no request to declare the UPA facially unconstitutional.[2] Plaintiffs' request for injunctive relief specifically asks that the court "compel[] Defendants to immediately cease all unlawful conduct . . . and to *properly administer the UPA*." (emphasis added). Plaintiffs' contention that their lawsuit is a facial challenge to the UPA is contradicted by their complaint's admission that the State's unlawful conduct will be cured if the State "properly administer[s] the UPA." A plain reading of the complaint thus indicates that Plaintiffs are alleging that Defendants' *abuse* of their powers granted by the UPA—not the UPA itself—is unconstitutional.[3]

---

[2] In fact, Plaintiffs' response to Defendants' motion to dismiss plainly states that "Plaintiffs here do not seek a declaration that the UPA is unconstitutional."

[3] We note that even if the complaint unequivocally challenged the constitutionality of the UPA or sufficiently pleaded that Defendants' unconstitutional conduct is generally ongoing, Plaintiffs' failure to show that they themselves are likely to suffer a future injury would still prevent them from being able to establish standing to seek prospective relief. *See Spokeo*, 578 U.S. at 338 n.6 (noting that plaintiffs purporting to represent a class must show that they personally have standing); *Arnett*, 515 F. Supp. 2d at 697–98 (deciding that the plaintiff lacked standing to seek prospective relief because he was unable to show that he himself was likely to have property taken under the UPA in the future).

No. 22-50828

Plaintiffs allege insufficient facts to indicate that these alleged abuses are ongoing.

*     *     *

Plaintiffs have failed to allege facts indicating that Texas's alleged abuse of the UPA is ongoing or will continue in the future. As there is no ongoing violation of federal law sufficiently pleaded in the complaint, Plaintiffs have failed to satisfy the *Ex parte Young* requirements, and their claims for prospective relief are barred by sovereign immunity.

## VI.

Plaintiffs have failed to demonstrate that they have standing to seek prospective relief, and they have not met their burden to proceed with their constitutional claims under the *Ex parte Young* exception to Eleventh Amendment sovereign immunity. Accordingly, we REVERSE the district court's denial of Eleventh Amendment sovereign immunity, and we REMAND with instructions to dismiss Plaintiffs' remaining claims for prospective relief without prejudice.[4]

---

[4] Because we find that the State is entitled to sovereign immunity on the claims before us on interlocutory appeal, we need not and do not address Defendants' alternative argument that Plaintiffs' takings claims are not ripe. We also need not and do not address Defendants' argument that Plaintiffs' requests for prospective relief impermissibly seek monetary damages. The district court dismissed Plaintiffs' request for an injunction ordering the State to return their assets, and that decision is not before this court on interlocutory appeal.