# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 9, 2025

Lyle W. Cayce
Clerk

No. 24-60553

_____

Harrison County, Mississippi; City of Biloxi,
Mississippi; City of D'Iberville, Mississippi; City of
Pass Christian, Mississippi; Mississippi Hotel and
Lodging Association; Mississippi Commercial Fisheries
United, Incorporated,

*Plaintiffs—Appellants*,

*versus*

United States Army Corps of Engineers,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:24-CV-21

_____

Before Jones, Stewart, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

A group of Mississippi localities and industry groups including
Harrison County, the Cities of Biloxi, D'Iberville, and Pass Christian, the
Mississippi Hotel and Lodging Association, and Mississippi Commercial

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-60553

Fisheries United (collectively "Harrison County") challenge the U.S. Army Corps of Engineers' (the "Corps") operation of the Bonnet Carré Spillway (the "Spillway"), a federal flood control structure upstream from New Orleans. Harrison County alleges that the Corps' openings of the Spillway lead to "takes" of bottlenose dolphins in the Mississippi Sound and thus require the Corps to apply for incidental take authorization under the Marine Mammal Protection Act ("MMPA"). The district court dismissed Harrison County's complaint for lack of subject matter jurisdiction. Because Harrison County cannot meet its burden of establishing that any injury resulting from future Spillway openings is imminent, we AFFIRM.

**I**

The Spillway is a federal flood control structure located upstream of New Orleans. When river conditions threaten to overtop the Mississippi River levee system, the Corps may open the Spillway to divert water into Lake Pontchartrain, which ultimately flows into the Mississippi Sound. The Corps does not operate the Spillway on any fixed schedule. Instead, it determines whether, when, and how long to open the Spillway based on real-time flood modeling and river level forecasts.

In 2011 and again in 2019, the Corps opened the Spillway in response to major flood events. The Corps opened the Spillway for 42 days in 2011 and 123 days (over two openings) in 2019. Harrison County alleges that these openings caused a massive influx of freshwater into the Mississippi Sound, which reduced salinity and contributed to widespread bottlenose dolphin injury and death. The Mississippi Sound saw 147 dolphin strandings in 2011 and 166 dolphin strandings in 2019, leading the National Marine Fisheries Service ("NMFS") to declare "unusual mortality events" during these years. The Corps did not seek an incidental take authorization under the MMPA before the Spillway openings in 2011, 2019, or any other year. It

maintains that the MMPA does not require it to do so because the Act authorizes—but does not compel—federal agencies to apply for such permits.

Harrison County alleges that the 2011 and 2019 Spillway openings harmed fisheries, damaged tourism, and inflicted environmental and reputational harm on its community. In January 2024, Harrison County filed suit in the Southern District of Mississippi, seeking declaratory and injunctive relief compelling the Corps to obtain an incidental take authorization before any future opening.

The Corps moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that Harrison County lacked standing. The district court agreed. It held that Harrison County had not shown a sufficiently concrete and imminent injury, had not established causation, and had not demonstrated redressability.[1] Harrison County timely appealed.

## II

This court has jurisdiction under 28 U.S.C. § 1291 because, in September 2024, the district court entered a final judgment under Federal Rule of Civil Procedure 54(b) disposing of all claims.

A district court's dismissal for lack of standing is reviewed de novo. *See Barilla v. City of Houston*, 13 F.4th 427, 430 (5th Cir. 2021). The court accepts the facts alleged in the complaint as true but may consider materials outside the pleadings to determine whether jurisdiction exists. *See Crane v. Johnson*, 783 F.3d 244, 250–51 (5th Cir. 2015).

---

[1] The district court also denied Harrison County's motion to amend its complaint as futile.

## III

### A

Congress enacted the MMPA in 1972 to prevent marine mammals from declining beyond the point at which they cease to play a meaningful role in the ecosystem. 16 U.S.C. § 1361(2). As a default rule, the statute makes it unlawful to "take" any marine mammal in U.S. jurisdictional waters or on the high seas. *Id.* §§ 1371(a), 1372(a)(2)(A). "Take" means to harass, hunt, capture, or kill—or attempt to do any of the above. *Id.* § 1362(13).

The statute also creates a mechanism for lawful incidental takes. A U.S. citizen engaged in a specified activity, within a specified region, may request authorization to incidentally take a small number of marine mammals over a period of up to five years. *Id.* § 1371(a)(5)(A)(i). If the Secretary of Commerce determines that the taking will have a "negligible impact" on the species and no "unmitigable adverse impact" on subsistence uses, the Secretary shall allow the activity. *Id.* § 1371(a)(5)(A)(i)(I). The Secretary's authorization must be accompanied by regulations prescribing permissible methods of taking, means of minimizing adverse impacts, and requirements for monitoring and reporting. *Id.* § 1371(a)(5)(A)(i)(II). If a party proceeds without authorization and causes a take, enforcement is left to the Secretary.[2] *Id.* § 1375.

NMFS has issued regulations implementing this process. *See* 50 C.F.R. §§ 216.1, 216.101, 216.104. A citizen seeking incidental take

---

[2] The MMPA does not create a private right of action for enforcement. Thus, Harrison County challenges the Departments' alleged failure to apply for an incidental take authorization through the Administrative Procedure Act ("APA"). However, because we find that Harrison County does not have standing to bring the claim, we need not address whether the APA authorizes it. *See* 5 U.S.C. § 702; *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) (addressing the requirements of an APA claim).

authorization must submit a written request to the Assistant Administrator, including fourteen categories of information (e.g., the nature, timing, and duration of the activity). *Id.* § 216.104(a). Once the request is deemed adequate and complete, NMFS must publish the request in the Federal Register for a thirty-day notice and comment period. *Id.* § 216.104(b)(2).

After reviewing the request and comments, NMFS may publish preliminary findings and propose regulations. *Id.* § 216.104(c). When those regulations are finalized, NMFS may issue a Letter of Authorization permitting the incidental take for up to five years. *Id.* § 216.106; 16 U.S.C. § 1371(a)(5)(A)(i).

**B**

We address standing as a threshold issue. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks omitted). To satisfy this inquiry, a plaintiff must prove:

> (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 180–81 (2000) (citation omitted). The plaintiff carries the burden and must allege facts "affirmatively" and "clearly" to carry that burden. *FW/PBS v. City of Dallas*, 493 U.S. 215, 231 (1990). Unlike ripeness and mootness, standing is measured "at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp.*, 541 U.S. 567, 570 (2004).

"[T]he first and foremost of standing's three elements" is injury in fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016) (citation modified). "To establish injury in fact, a plaintiff must show that [she] suffered 'an invasion of a legally protected interest,' . . . ." *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Where the plaintiff seeks prospective or declaratory relief, she "must demonstrate continuing harm or a real and immediate threat of repeated injury in the future." *James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023) (cleaned up), *cert. denied*, 144 S. Ct. 1461 (2024). It is well established that "[t]he threat of future injury must be 'certainly impending'; mere allegations of possible future injury will not suffice." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

"The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008)). To satisfy causation, the respondent's alleged conduct need not be the sole cause of the petitioner's injuries. It only needs to be "among" the significant contributors. *Book People, Inc. v. Wong*, 91 F.4th 318, 333 (5th Cir. 2024) (citation modified). To satisfy redressability, a petitioner must show "an injury to [her]self that is likely to be redressed by a favorable decision." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38 (1976).

## IV

### A

Harrison County argues that it faces a substantial risk of future harm from the Corps' operation of the Spillway. It points to the 2011 and 2019 Spillway openings as evidence that such operations are recurring. It contends that recent climate patterns—including increased rainfall and high river

6

discharge—make future operations not only likely but inevitable. According to Harrison County, each opening discharges massive quantities of freshwater into the Mississippi Sound, lowering salinity and affecting the health and safety of the bottlenose dolphins. It asserts that as a result of past openings, its residents and members suffered commercial, recreational, and aesthetic injuries directly tied to the Corps' take of bottlenose dolphins.

Harrison County argues that its injuries are fairly traceable to the Corps because it decides whether to open the Spillway and whether to apply for an incidental take authorization before doing so. It also urges that these injuries are redressable because even if the Corps applied for an incidental take authorization under the MMPA, NMFS could impose conditions on its operations. Harrison County argues that NMFS's ability to regulate future openings would meaningfully reduce the risk of harm to the dolphins, and thereby reduce the risk of harm to them.

**B**

The Corps responds that Harrison County's injuries are too speculative to support standing. It emphasizes that no future opening is scheduled and that the decision to operate the Spillway depends on unpredictable flood events. Without a planned action or a non-contingent threat, Harrison County lacks a concrete and imminent injury. The Corps points out that Harrison County only alleges that two of the past Spillway openings were injury-causing—although the Corps has opened the Spillway several other times between the 2011 and 2019 openings.

The Corps also challenges causation, asserting that dolphin mortality and other harms result from a "a long causal chain of uncertain events." According to the Corps, a favorable decision would not address Harrison County's injury because the MMPA imposes no duty to seek incidental take authorization. And even if the statute did impose such a duty, NMFS may

still issue a permit without any restrictions, or deny one altogether. Thus, a favorable ruling would not guarantee any change in the Spillway's operation or the outcome of future events.

## V

To establish that this court has subject matter jurisdiction over the dispute, Harrison County must carry its burden of establishing an injury in fact that is concrete, that is, an injury that is actual or imminent, not conjectural or hypothetical. *Spokeo, Inc.*, 578 U.S. at 339. It cannot do so here.

Harrison County seeks prospective and declaratory relief, and thus "must demonstrate continuing harm or a real and immediate threat of repeated injury in the future." *See James*, 86 F.4th at 1081. In an attempt to do so, Harrison County points to past ecological damage in the Mississippi Sound including dead and injured dolphins, degraded habitats, and disrupted fisheries. It relies on the pattern of openings in 2011 and 2019 to claim that more openings are forthcoming, and that such openings will occur with greater frequency given changing climate conditions.

But past injury alone does not demonstrate continued harm or immediate threat of future injury. *See id.* Spillway openings occur only when the Mississippi River reaches certain flood-stage thresholds, and those thresholds depend on future conditions that the parties can neither control nor predict. Harrison County has not alleged that any future opening of the Spillway has been scheduled or forecasted. And while it is correct that it need not predict precisely when a future opening will occur, it must show that its injury is "certainly impending." *See Clapper*, 568 U.S. at 409. It cannot do so because it cannot establish that a future opening is imminent.

But even if Harrison County could establish that a future Spillway opening is imminent, it cannot establish that its injuries stemming from any such opening are imminent. In other words, Harrison County has not

established that a Spillway opening *that would cause its alleged injuries* is currently impending.[3] The Spillway has been opened in 2011, 2016, 2018, 2019, and 2020. But Harrison County points to only the 2011 and 2019 openings as injury-causing. The Corps points out that Louis Skrmetta, one of Harrison County's declarants who owns a dolphin cruise company, cited the success of his dolphin cruises in 2020 despite the Spillway opening that year. Thus, in addition to the string of contingencies Harrison County relies on to predict another Spillway opening, there is an additional unknown: whether the opening will cause any harm to the bottlenose dolphins (and therefore to Harrison County's interests).

The Supreme Court's holding in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) is instructive. In *Lyons*, the plaintiff sought damages, an injunction, and declaratory relief following an incident in which police officers seized him and applied a chokehold. *Id.* at 97–98. The *Lyons* Court held that the plaintiff's allegation of past harm was insufficient to seek prospective relief absent a showing that he was likely to suffer a future injury from the use of chokeholds by police officers. *Id.* at 105. The plaintiff's allegation of past harm did "nothing to establish a real and immediate threat that he would again be stopped" and subjected to that method of restraint. *Id.*

---

[3] All three elements of standing must be present for this court to have Article III jurisdiction over the dispute. *See Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 180–81 (2000). Therefore, Harrison County's failure to establish the first element of standing is fatal and we need not consider whether its injury is traceable to the Corps and redressable by a favorable court decision. The inquiry of whether all Spillway openings lead to Harrison County's injuries goes to both the first element (imminence of the injury) and second element (traceability to the defendant's actions) of the standing analysis, and it is thus properly considered here.

Rather than reckoning with *Lyons* and its progeny, Harrison County largely relies on this court's holding in *Crawford v. Hinds County Board of Supervisors*, 1 F.4th 371 (5th Cir. 2021). In that case, Hinds County resident Scott Crawford, a wheelchair user, was called for jury duty at a non-wheelchair-accessible courthouse four times in seven years. *Id.* at 373–74, 377. The district court denied Crawford injunctive relief, explaining that Crawford could not establish future injury sufficient to support prospective relief. *Id.* at 374. The panel reversed, finding that given the frequency at which Crawford had been called to jury duty and the county's limited population, Crawford was likely to experience the injury again. *Id.* at 376. Whether Crawford would face future injury depended on just one variable: If his name was selected for jury duty again, he would face injury. *See id.*

Here, whether Harrison County will face future injury depends on much more than just one variable. The Mississippi Sound is not a closed system. It is a living estuary shaped by tides, salinity, temperature, storm runoff, upstream nutrient loading, and biological flux. Future injury depends on, for example, the extent of future rainfall, upstream runoff, river surges, and the Corps' decisions about whether to open the Spillway and (if so) the duration and extent of any opening. Further, the *Hinds County* panel drew a significant distinction between two types of jury service cases. On the one hand, plaintiffs in those cases who seek an injunction "against a systemic exclusionary practice" have standing for an injunction, but plaintiffs who seek an injunction based on a "one-off, episodic exclusion related to a particular judge's actions" do not. *Id.* While this case, of course, does not implicate jury service, to the extent that this court's holding in that case is analogous to the instant dispute, Harrison County's injuries would fall in the latter category. Harrison County alleges episodic harm caused by only some but not all of the Spillway openings. On this record, Harrison County fails to

show that openings of the Spillway necessarily result in harm to the bottlenose dolphins.

In short, Harrison County cannot show that another, future Spillway opening is imminent—let alone that such an opening would cause its alleged injuries. Thus, Harrison County fails to carry its burden of establishing Article III standing.

## VI

For the foregoing reasons, the judgment of the district court is AFFIRMED.