# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2025

Lyle W. Cayce
Clerk

No. 23-50582

Rolando Ambriz,

*Plaintiff—Appellant*,

*versus*

Kelly Hancock, *Acting Comptroller of Public Accounts of the State of Texas, in his official capacity*,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:22-CV-1067

_____

Before Richman, Oldham, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

The purported owner of a presumptively abandoned savings account that was taken into state custody challenges the constitutionality of the state law which prohibits payment of interest or other compensation to him for the public use of his property. The district court dismissed the federal takings claim for failure to state a claim, and the owner appealed. Concluding that his

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

federal takings claim is barred by sovereign immunity, we AFFIRM the judgment but REMAND with instructions to dismiss the claim without prejudice.

I

The Texas Unclaimed Property Act (TUPA) governs, among other things, personal property in Texas that is presumed abandoned. *See* TEX. PROP. CODE § 72.001 *et seq.* Personal property is presumed abandoned if, after a three-year period,

> (1) the location of the owner of the property is unknown to the holder of the property; and

> (2) according to the knowledge and records of the holder of the property, a claim to the property has not been asserted or an act of ownership of the property has not been exercised.

*Id.* § 72.101(a).

TUPA requires holders of presumed abandoned property to report and deliver that property to the Texas Comptroller of Public Accounts on an annual basis. *Id.* §§ 74.101, 74.301. If the property is valued at more than $250, the holder must provide the owner at least 60 days' notice that the property will be delivered to the Comptroller if it is not claimed. *Id.* § 74.1011(a). Upon receipt, the State "shall assume custody of the property and responsibility for its safekeeping." *Id.* § 74.304(a). If the property is money, the Comptroller deposits the funds, along with any income generated from those funds, to the credit of the State's general revenue fund. *Id.* §§ 74.601(b), 74.603.

The Comptroller is generally required to give notice to owners of property delivered to the State under TUPA and to instruct them on how to

reclaim their property. *Id.* §§ 74.201–.205.[1] An owner may file a claim for the return of property with the Comptroller at any time, and the Comptroller can approve the claim, deny the claim, or hold a hearing to determine the validity of the claim. *Id.* §§ 74.501, 74.504. An owner may appeal the Comptroller's decision in state district court in Travis County. *Id.* § 74.506.

If an owner's claim is approved, the Comptroller returns the property to the owner or pays the owner from the general revenue fund. *Id.* §§ 74.501, 74.602. This payment does not include any interest earned on the property while it was in the State's custody; TUPA limits the State's liability to the amount of the property that was delivered to the Comptroller and is still in his custody. *Id.* § 74.304(d).

## II

Ronaldo Ambriz contends he is the owner of a presumptively abandoned savings account containing $25 that was taken into custody by the Comptroller[2] and deposited into the State's general revenue fund. He alleges that when he claims his property—which he intends to do "as soon as he has obtained a final ruling from this litigation"—he will only receive the $25. He will not be compensated for the use of his money to generate revenue for the State. He also alleges that the Comptroller receives more than $100 million in unclaimed property every year and holds over $7 billion.

In this class-action suit under 42 U.S.C. § 1983 and state law, Ambriz asserts that to the extent TUPA prohibits the Comptroller from paying just

---

[1] The Comptroller maintains a searchable website of unclaimed property held by the State, listing the names of reported owners, their last known addresses, and a description of their property. *See* https://www.claimittexas.gov/.

[2] Kelly Hancock, Acting Comptroller of Public Accounts of the State of Texas, is automatically substituted for former Comptroller Glenn Hegar. *See* Fed. R. App. P. 43(c)(2).

compensation for the State's public use of unclaimed property, it violates the Fifth Amendment as applied to the states by the Fourteenth Amendment and Article 1, Section 17 of the Texas Constitution. He seeks a judgment that (1) declares TUPA's prohibition on the payment of just compensation to owners of unclaimed property for its public use unconstitutional under the Fifth Amendment, (2) requires the Comptroller to pay owners "just compensation for the public use of their property while it was in his custody" when they reclaim their property, and (3) sets out "the measure of just compensation that the Comptroller must pay to" unclaimed property owners. He also seeks an injunction requiring the Comptroller to pay just compensation to him and class members "who reclaim their property in the future, in accordance with the declaratory relief sought pursuant to the declared measure thereof on future claims of Unclaimed Property."

The Comptroller moved to dismiss the suit for lack of subject-matter jurisdiction, contending that the Eleventh Amendment bars Ambriz's claims and that he lacks standing. He also contends Ambriz has failed to state a claim upon which relief may be granted because there is no "taking" of property presumed abandoned under TUPA.

The district court partially granted the motion and dismissed all state law claims and any federal claims seeking retrospective relief or specific damages as barred by sovereign immunity. As for Ambriz's federal claims for prospective declaratory or injunctive relief, it found that sovereign immunity did not bar those claims and that he had standing to assert them, but it dismissed them because "the State's retention of any interest on his unclaimed property fails to state a takings clause claim."

Ambriz only appeals the dismissal of his federal claims for prospective declaratory and injunctive relief.

No. 23-50582

III

The Comptroller argues that the district court lacked jurisdiction over this lawsuit. He contends that the suit is barred by Eleventh Amendment sovereign immunity, that Ambriz does not have standing, and that his claims are not ripe.

We review jurisdictional issues de novo. *See Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015). While we must resolve jurisdictional questions before reaching the arguments on the merits, "there is no mandatory 'sequencing of jurisdictional issues.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)); *see NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015) ("Federal courts may analyze arguments that question our jurisdiction in any order.").

IV

The Eleventh Amendment generally bars private suits against a state in federal court "unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). Despite this general rule, the *Ex parte Young* exception allows suits for prospective relief against a state official acting in violation of federal law. *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)). To invoke this narrow exception, the plaintiff must (1) allege an ongoing violation of federal law and (2) seek relief properly characterized as prospective. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). "To determine whether the exception applies, we conduct a simple, 'straightforward inquiry,' and we do not consider the merits of the underlying claims." *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (en banc) (citation modified).

No. 23-50582

Here, Ambriz's complaint alleges that the Comptroller took custody of the funds in his savings account, the funds were deposited into the State's general revenue fund to generate returns for the State's operations and programs, and TUPA bars the Comptroller from paying him any compensation for the State's use of his property. He seeks a judgment declaring that TUPA's prohibition on paying "just compensation" for the State's use of his property violates the Fifth Amendment and requiring the Comptroller to pay him "just compensation"—as determined by the district court—"for the public use of [his] property while it was in [State] custody" when he reclaims his property in the future.

Ambriz has not sufficiently alleged an ongoing constitutional violation for purposes of the *Ex parte Young* exception. An unlawful taking occurs as soon as the government takes property without paying just compensation to its owner. *See Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019) (citation omitted). Ambriz "suffered a constitutional violation" when the Comptroller took custody of the funds in Ambriz's account and deposited them into the State's general revenue fund, where those funds were "subject to appropriation by the legislature," TEX. PROP. CODE § 74.603. *See Knick*, 588 U.S. at 198 (citation omitted). There is no ongoing violation of federal law to enjoin.

Ambriz contends that because the State continues using his property for public benefit, the violation is ongoing. The residual effects of a prior taking do not constitute an ongoing violation for *Ex parte Young* purposes, however. *See Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) (noting *Ex parte Young*'s focus on "cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past"). Any alleged ongoing violation arises solely from Ambriz's decision to delay pursuing the return of his property, not from any continuing conduct of the State.

No. 23-50582

Ambriz also does not meet *Ex parte Young*'s prospective relief requirement. His request for a declaratory judgment requiring the Comptroller to "pay [him] just compensation for the public use of [his] property while it was in [State] custody," is "tantamount to an award of damages for a past violation of federal law." *Papasan v. Allain*, 478 U.S. 265, 278 (1986). He frames this as a "purely prospective" request, as his desired injunction would merely require the Comptroller to pay him just compensation when he recovers his property in the future, but it aims to remedy a prior uncompensated taking of property. *See, e.g.*, *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008) ("A remedy for past injury, even if it purports to be an injunction against state officers requiring the future payment of money, is barred because relief 'inevitably come[s] from the general revenues of the State . . . , and thus . . . resembles far more closely [a] monetary award against the State itself,' which is forbidden under the Eleventh Amendment." (quoting *Edelman v. Jordan*, 415 U.S. 651, 665 (1974)). Although federal courts may order prospective relief that has an ancillary "impact on state treasuries," an order "which requires the payment of a[n] . . . amount of money which that court held should have been paid, was not, stands on quite a different footing" than injunctions with impacts on the state fisc. *Edelman*, 415 U.S. at 664, 667.[3]

The *Ex parte Young* exception does not apply because Ambriz has neither alleged an ongoing violation of federal law, nor requested relief

---

[3] Because we resolve this appeal based on sovereign immunity, we do not need to address the Comptroller's other jurisdictional arguments. *See James v. Hegar*, 86 F.4th 1076, 1084 (5th Cir. 2023) (pretermitting consideration of ripeness issue after determining that sovereign immunity applied).

properly characterized as prospective. Because sovereign immunity bars his federal takings claim, there is no federal jurisdiction.[4]

\* \* \*

We AFFIRM the judgment but REMAND with instructions to dismiss the claims against the Comptroller without prejudice. *See, e.g.*, *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 620 (5th Cir. 2020) ("Claims barred by sovereign immunity are dismissed without prejudice, not with prejudice." (citation modified)); *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because [Eleventh Amendment] sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice."). We express no opinion on what rights and remedies Ambriz has under state law. *See DeVillier v. Texas*, 601 U.S. 285, 293 (2024).

---

[4] Ambriz also argues that the Eleventh Amendment does not bar his takings claim because the State consented to suit in federal court pursuant to the "plan of the Convention," citing *PennEast Pipeline Co. v. New Jersey*, 594 U.S. 482 (2021). It held that a state could not invoke its Eleventh Amendment immunity in a condemnation action involving the delegation of the *federal eminent domain power* where it "consented to the exercise of that power—in its entirety—in the plan of the Convention." *Id.* at 508.