# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 17, 2025

Lyle W. Cayce
Clerk

No. 23-40629

———————————

BURNETT SPECIALISTS; STAFF FORCE, *doing business as* STAFF FORCE PERSONNEL SERVICES; ALLEGIANCE STAFFING CORPORATION; LINK STAFFING; LEADINGEDGE PERSONNEL, LIMITED,

*Plaintiffs—Appellants*,

*versus*

WILLIAM B. COWEN, *Acting General Counsel of the National Labor Relations Board, in her official capacity*; UNITED STATES OF AMERICA; NATIONAL LABOR RELATIONS BOARD,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:22-CV-605

———————————————————————

Before HIGGINBOTHAM, STEWART, and HAYNES, *Circuit Judges*.
PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

This appeal arises out of Memorandum GC 22-04, titled "The Right to Refrain from Captive Audience and other Mandatory Meetings," issued by the former General Counsel of the NLRB, Jennifer Abruzzo.

No. 23-40629

## I.

We begin with the basics. Section 7 of the National Labor Relations Act ("NLRA") creates a statutory right for employees to "self-organiz[e], to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection"[1] and the right "to refrain from any or all of such activities"[2] except when "such a right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title."[3] Section 8 outlines employer actions constituting "unfair labor practices."[4]

The NLRB is tasked with policing labor practices affecting commerce,[5] a task delegated to the General Counsel as the prosecutor and to the NLRB itself as the adjudicator of complaints of unfair labor practices.[6] When a private party files a "charge" alleging an unfair labor practice, the General Counsel decides whether a "complaint" should issue.[7] Neither the General Counsel nor the Board have authority to investigate absent the filing

---

[1] 29 U.S.C. § 157.

[2] *Id.*

[3] *Id.*

[4] *Id.* at § 158(a).

[5] *Id.* at § 160.

[6] *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 444 (5th Cir. 2022) (citing *NLRB v. United Food & Com. Workers Union, Loc. 23*, 484 U.S. 112, 124 (1987)).

[7] *Kent Corp. v. NLRB*, 530 F.2d 612, 615 (5th Cir. 1976).

of a charge.[8] Only the General Counsel may file a complaint, and its decision is unreviewable.[9] On the filing of a complaint, the Board may then—and only then—adjudicate the proceeding and "'[a]ny person aggrieved by a final order of the Board' may petition for review in the appropriate federal appellate court."[10]

## II.

Charged with these responsibilities, General Counsel Abruzzo issued a keystone Memorandum on April 7, 2022 outlining her plan to urge the NLRB to reverse its holding in *Babcock*[11] that an employer does not violate the NLRA when it compels its employees to attend a meeting in which it urges employees to reject union representation, and that Abruzzo "will" urge the NLRB to hold that, in two circumstances, employees "will understand their presence and attention to employer speech concerning their exercise of Section 7 rights to be required: when employees are (1) forced to convene on paid time or (2) cornered by management while performing their job duties."

Abruzzo clarified the meaning of this sentence in a brief in *Cemex Construction Material Pacific, LLC*.[12] There, Abruzzo argued that if an

_____

[8] 29 U.S.C. § 160(b); *Precision Concrete v. NLRB*, 334 F.3d 88, 91 (D.C. Cir. 2003) ("The Board . . . acting through the General Counsel . . . may not initiate a charge on its own; it may prosecute only conduct about which someone else has filed a charge.").

[9] *N.L.R.B. v. United Food & Com. Workers Union, Loc. 23, AFL-CIO*, 484 U.S. 112, 113 (1987).

[10] *Kent Corp.*, 530 F.2d at 615; *United Nat. Foods* 66 F.4th at 540 (citing *Shell Chem. Co. v. NLRB*, 495 F.2d 1116, 1119 (5th Cir. 1974) (quoting 29 U.S.C. § 160(f)). The appropriate federal appellate court includes where such a person "resides or transacts business." 29 U.S.C. § 160(f).

[11] *Babcock & Wilcox Co.*, 77 N.L.R.B. 577 (1948).

[12] *See* 372 N.L.R.B. 157 (2023).

employer convenes employees for a Section 7 meeting on paid time, they must tell employees: (1) the purpose of the meeting; (2) that if an employee attends, they are free to leave at any time; (3) that attendance is voluntary; (4) that nonattendance will not result in reprisals; and (5) that attendance will not result in benefits. And the meeting "must occur in a context free from employer hostility to the exercise of Section 7 rights." If an employer announces a meeting in advance, "it must reiterate the explanation and assurances set forth above at the start of the meeting."

Abruzzo also argued in that briefing that if an employer corners an employee to address them concerning their exercise of Section 7 rights, the employer must tell the employee: (1) the purpose of the encounter; (2) that participation is voluntary; (3) that nonparticipation will not result in reprisals; (4) that participation will not result in rewards or benefits; and (5) that the employee may end the encounter at any time without loss of pay by leaving or by asking the employer to stop. The encounter must also occur in a context free from employer hostility to the exercise of Section 7 rights and, if the encounter takes place at the employee's work area, the employer must also obtain affirmative consent from the employee in order to talk to the employee.

The Memorandum, read together with Abruzzo's briefing in *Cemex*, does not advocate for a complete prohibition of any speech by an employer; it rather maintains that the NLRB should mandate speech in certain instances: when an employer is to discuss a topic implicating an employee's Section 7 rights by forcing employees to convene on paid time or cornering an employee while the employee is performing job duties.

After oral argument in this case, the NRLB expressly overruled *Babcock*. In *Amazon.com Services LLC*, the NLRB held that an employer violates the NLRA if it "requires employees to attend a meeting at which the

4

employer expresses its views on unionization."[13] If an employer is to hold such a meeting, it must inform employees in advance of the meeting that:

> 1. The employer intends to express its views on unionization at a meeting at which attendance is voluntary;
>
> 2. Employees will not be subject to discipline, discharge, or other adverse consequences for failing to attend the meeting or for leaving the meeting; and
>
> 3. The employer will not keep records of which employees attend, fail to attend, or leave the meeting.[14]

The NLRB will find that an employer compelled attendance at a meeting if, under all the circumstances:

> employees could reasonably conclude that attendance at the meeting is required as part of their job duties or could reasonably conclude that their failure to attend or remain at the meeting could subject them to discharge, discipline, or any other adverse consequences.[15]

The NLRB provided two examples of compelled meeting attendance: attendance mandated by an express order from an agent of the employer or attendance at a meeting that is included on employees' work schedules, as communicated by an agent of the employer.[16]

### III.

Staffing companies operating in Texas, filed this suit alleging that the Memorandum announced that Abruzzo would take action to enforce a new

---

[13] 373 N.L.R.B. No. 136 at 19 (Nov. 13, 2024).

[14] *Id.*

[15] *Id.* at 20.

[16] *Id.*

interpretation of the NLRA and that the new interpretation itself "prohibits employers from speaking to employees about unionization." The Staffing Companies assert that the new interpretation "directly restricts employer speech on the basis of its content, viewpoint, and speaker," a denial of their speech protected by the First Amendment. The Staffing Companies further argue that the Memorandum and Abruzzo's application of the principles espoused by the Memorandum against other employers have a substantial "chilling effect" on the Staffing Companies' speech, denied their First Amendment rights to express themselves on the merits of unionization, and that the Memorandum itself "discriminates on the basis of viewpoint, speaker, and content—employers may talk about safety and job training but not about unions." Finally, the Staffing Companies assert that the Memorandum is overbroad and vague because "it sweeps in non-coercive, non-threatening speech with illegal speech and fails to give meaningful guidance as to what constitutes 'cornered' employees."

The Staffing Companies seek a preliminary and permanent injunction against federal officials acting in their official capacities enforcing the Memorandum's guidance, as well as a declaratory judgment that the guidance is unconstitutional. The NLRB and Abruzzo moved to dismiss the complaint for lack of jurisdiction, joined by the United States. The district court granted the motion, holding that it lacked jurisdiction for three reasons: (1) the Plaintiffs challenged the NLRB General Counsel's prosecutorial decisions, which are made unreviewable by the NLRA; (2) the NLRA's scheme of reviewing unfair labor practices precludes jurisdiction; and (3) the Plaintiffs lack standing.

The Staffing Companies appeal, arguing that the district court wrongly dismissed their complaint, that the NLRA does not preclude appellate review, that they have standing "for the simple reason that the Memorandum announces a rule that applies to them," and is a final agency

action reviewable under the APA, and that—even if the Memorandum does not constitute an agency action—it is reviewable as a *Larson/ultra vires* claim.

While the NLRB has now overruled Babcock, the NRLB's decision does not fully adopt Abruzzo's position on meetings compelled by employers and it does not discuss cornered employees. Importantly, Abruzzo's briefing here asserts that, pursuant to the Memorandum, complaints will not issue when employers hold captive-audience meetings if there are no other alleged violations of current law,[17] and that every case cited by Plaintiffs where captive-audience complaints have issued involved other, independent violations of the NLRA.[18]

Following the 2024 presidential election, President Trump removed Abruzzo from her position as General Counsel and William Cowen became the Acting General Counsel of the NLRB. Cowen notified the court of the automatic substitution of Abruzzo for Cowen and then filed a "Notice of Case Development and Suggestion of Mootness," alerting this court to Cowen's rescission of the Memorandum. According to Cowen, the Memorandum now has no effect and the remedy sought in the complaint would not provide relief to the Plaintiffs. For that reason, Cowen believes that this case is moot and the district court's dismissal of the case should be affirmed. The Staffing Companies disagree.

---

[17] Red Brief at 54, n.15 ("Appellants will not face an administrative complaint even if they hold a captive-audience meeting, so long as they do not commit another established violation of the Act. Each of the cases cited by Appellants where captive-audience complaints have issued involved other, independent violations of the Act.").

[18] *See also* Red Brief at 54, n.15 ("Appellants will not face an administrative complaint even if they hold a captive-audience meeting, so long as they do not commit another established violation of the Act. Each of the cases cited by Appellants where captive-audience complaints have issued involved other, independent violations of the Act.").

No. 23-40629

## IV.

We review *de novo* rulings on motions to dismiss for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1), including motions to dismiss for lack of standing.[19] When ruling on a motion to dismiss for lack of subject-matter jurisdiction, a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts.[20] The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to a plaintiff.[21] When a defendant moves to dismiss under Rule 12(b)(1) challenging jurisdiction, the party invoking jurisdiction has the burden to establish subject-matter jurisdiction.[22] Here, the Staffing Companies bear the burden of demonstrating their standing.[23] At the pleading stage, the burden is "to allege a plausible set of facts establishing jurisdiction."[24]

## V.

"Under the Constitution, one element of Article III's 'Cases' and 'Controversies' requirement is that a plaintiff must establish standing to

---

[19] *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 (5th Cir. 2019), as revised (June 6, 2019) ("The standard of review for a dismissal pursuant to both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) is de novo.").

[20] *Den Norske Stats Oljeselskap As v. HeereMac v.o.f.*, 241 F.3d 420, 424 (5th Cir. 2001).

[21] *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).

[22] *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

[23] *E.T. v. Paxton*, 41 F.4th 709, 718 at n.2 (5th Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021)).

[24] *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

sue."[25] It has these elements: (1) injury in fact, (2) a sufficient "causal connection between the injury and the conduct complained of" and (3) "a likelihood that the injury will be redressed by a favorable decision."[26]

While the Staffing Companies have not provided evidence of enforcement of the Memorandum causing them direct injury, they may establish injury in fact when a credible threat of a policy's enforcement chills their speech or causes self-censorship,[27] a threat that is "certainly impending" and not an "attenuated chain of possibilities" partially based on "the decisions of independent actors."[28]

## A.

While a credible threat of enforcement may be assumed absent compelling contrary evidence when a statute facially restricts expressive speech,[29] we cannot make that assumption here in the face of "compelling contrary evidence" that there is no credible threat of enforcement of the policies espoused in the Memorandum.

As the Staffing Companies admitted—there is no known unionization attempt, and there is no reason to believe that the Staffing Companies currently wish to hold meetings with employees on paid time to discuss unionization, much less that they currently want to do so in a manner that

---

[25] *Glass v. Paxton*, 900 F.3d 233, 238 (5th Cir. 2018) (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013)).

[26] *Id.* (cleaned up) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

[27] *Texas State LULAC v. Elfant*, 52 F.4th 248, 256 (5th Cir. 2022) (citation omitted), *cert. denied sub nom. Texas State LULAC v. Torres*, 144 S. Ct. 70 (2023).

[28] *Glass*, 900 F.3d at 239 (quoting *Clapper*, 568 U.S. at 410-14).

[29] *Elfant*, 52 F.4th at 257 (5th Cir. 2022); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), as revised (Oct. 30, 2020).

might lead the NLRB General Counsel to bring a complaint against the Staffing Companies.

Nor do Plaintiffs' declarations support any intent to engage in conduct that the General Counsel may want to prosecute pursuant to the Memorandum. Those declarations merely state the abstract: "I would like to be able to discuss the merits of unionization with my employees on paid time without fear of facing unfair labor practices charges." The Staffing Companies' complaint likewise fails to establish intent to engage in conduct that the General Counsel may seek to prosecute, alleging only that the Staffing Companies "would" hold meetings with employees on paid time to discuss unionization "if" there is a unionization attempt. This conditional statement fails to support a current credible threat of enforcement against the Staffing Companies.

There is no evidence in the record to show that the Staffing Companies today actually intend to engage in any conduct arguably affected with a constitutional interest. The Staffing Companies assert in their Reply Brief that they do intend to engage in regulated speech. But nothing in the record supports that contention and the Staffing Companies complaint never moves beyond, we may someday. Relatedly, we have been unwilling to assume a credible threat of future enforcement when that future enforcement is dependent upon decisions of third parties, who might one day proceed.[30] Here, future enforcement would depend upon a third party (an employee) filing an unfair labor practice charge enabling the General Counsel to file a

_____

[30] *Elfant*, 52 F.4th at 257 at n.6 (5th Cir. 2022) (finding that the presumption of credible threat does not apply given "the number of stars that would have to align before Plaintiffs could be prosecuted," including third party action); *see also Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018) (stating that the risk of prosecution "is speculative and depends in large part on the actions of third-party donors").

complaint pursuant to *Amazon.com Services LLC* or the Memorandum.[31]

As there is here little non-speculative evidence of a credible threat of enforcement against the Staffing Companies and because future enforcement is dependent upon the uncertain actions of third parties, this Court cannot here *assume* a credible threat of enforcement in this case.

**B.**

This said, we may nevertheless find a credible threat of enforcement that chills speech when the plaintiff can show each the following: (1) that they "intend[] to engage in a course of conduct arguably affected with a constitutional interest"; (2) that their conduct is "arguably regulated" by the challenged policy; and (3) that "the threat of future enforcement is substantial."[32] There is no record evidence that the Staffing Companies intend to engage in a course of conduct arguably affected with a constitutional interest. Thus, the Staffing Companies cannot satisfy the first prong of the chilled speech analysis. The Staffing Companies argue that because they "have discussed unionization in the past and would like to do so in the future while employees are on paid time," they have demonstrated their intent to engage in conduct regulated by the Memorandum. But one's desire *to be able to take* an action does not equate to one's intent to *actually take* such an action. And there is no known impending unionization effort at the Staffing Companies' businesses that would lead the Staffing Companies to engage in conduct regulated by the Memorandum. The Staffing Companies have not cited to or provided any evidence that they actually intend to engage in this

---

[31] *See* 373 N.L.R.B. No. 136 at 19 (Nov. 13, 2024).

[32] *Elfant*, 52 F.4th at 256 (citation omitted); *Speech First, Inc.*, 979 F.3d at 332, as revised (Oct. 30, 2020) (holding that speech need not be "arguably proscribed" to satisfy this second requirement as long as the speech is at least "arguably regulated").

conduct in the future and, therefore, have not alleged a plausible set of facts establishing that they can meet the first requirement to prove chilled speech.

Turning to the second element, it is not surprising that the Staffing Companies also failed to meet their burden of sufficiently alleging that their conduct is arguably regulated by the General Counsel. Again, the Staffing Companies did not provide evidence of plans to engage in conduct that would be affected by the General Counsel's future enforcement of the policies espoused in the Memorandum, the NLRB's decision in *Amazon.com Services LLC*, or any other document. Without intent to engage in speech that Abruzzo sought to regulate, the Staffing Companies cannot meet their burden of proving that their conduct is or will be arguably regulated by the General Counsel or that they will otherwise suffer injury.

Third, the Staffing Companies cannot prove that a threat of future enforcement is substantial. And while enforcement includes threatened civil prosecution,[33] there is no evidence that the Staffing Companies intend to engage in conduct for which they may be threatened with prosecution.

A plaintiff can meet the injury in fact requirement of standing if they can demonstrate satisfaction of each prong of the chilled speech analysis. But the Staffing Companies cannot meet their burden of proving that they satisfy any of those prongs. The Staffing Companies have not otherwise demonstrated that there is a "certainly impending" or "substantial risk" of future injury.

Staffing Companies argue that they have standing to bring this suit based on this circuit's 2015 opinion in *Contender Farms*.[34] There, the

---

[33] *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024).

[34] *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015).

plaintiffs were buyers, sellers, and exhibitors of horses who were inspected by Horse Industry Organizations.[35] The United States Department of Agriculture adopted a final rule requiring that certain horse organizations adopt penalties, including suspension, for soring violations.[36] Those suspensions "target[ed] participants in Tennessee walking horse events" including those showing the horse, exhibiting the horse, entering or allowing the entry of a horse in a show or exhibition, selling the horse, auctioning the horse, or offering the horse for sale or auction. The plaintiffs in that case "suggest[ed] that they could neither earn a living nor compete recreationally without participating in [shows affiliated with Horse Industry Organizations]" and challenged the USDA rule.[37]

This court held that "[i]f plaintiff is an object of a regulation, 'there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'"[38] But that does not apply "when the plaintiff is not himself the object of the government action or inaction he challenges."[39] "Whether someone is in fact an object of a regulation is a flexible inquiry rooted in common sense."[40] In *Contender Farms*, the plaintiffs were the object of the regulation "because they participate[d] in the type of events that the Regulation [sought] to regulate, *i.e.*, the major Tennessee walking horse events."[41]

---

[35] *Id.* at 262.

[36] *Id.* at 263.

[37] *Id.* at 265.

[38] *Id.* at 264 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)).

[39] *Id.* (quoting *Lujan*, 504 U.S. at 561-62).

[40] *Id.* at 265.

[41] *Id.* at 266.

No. 23-40629

Here, the Staffing Companies are not currently the "object of the governmental action . . . [they] challenge[]" and it is not sufficiently likely that the Staffing Companies ever will be the object of that action given that there is no evidence that they intend to take any action arguably regulated by the Memorandum or the NLRB's decision in *Amazon.com Services LLC*. *Contender Farms* does not support standing.

In a letter filed pursuant to Federal Rules of Appellate Procedure 28(j), Staffing Companies argue that this Court's recent opinion in *Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs.* expanded the holding in *Contender Farms* by finding that plaintiff healthcare providers had standing when they were subject to a regulatory scheme wherein arbitrators were unlawfully deprived of their statutory discretion: "the fact that the Plaintiffs are now subject to regulations that are contrary to law is itself a concrete injury sufficient to give them standing."[42]

Like *Contender Farms*, *Texas Med. Ass'n* does not offer comfort to the Staffing Companies because they have not sufficiently alleged the intent needed to engage in the regulated conduct as in the Tennessee walking horse events.

## VI.

Because the complaint should be dismissed due to the Staffing Companies lack of standing, we need not address the parties' arguments on mootness.[43]

---

[42] 110 F.4th 762, 773 (5th Cir. 2024).

[43] *See Daves v. Dallas Cnty.*, 64 F.4th 616, 623 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 548, 217 L. Ed. 2d 292 (2024) (noting that "'[d]espite the possibility of mootness, . . . a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits." (quoting *Sinochem Int'l v. Malaysia Int'l Shipping*, 549 U.S. 422, 430–31 (2007))); *K.P. v. LeBlanc*, 729 F.3d 427, 437 (5th Cir. 2013) (addressing standing before

No. 23-40629

## VII.

The district court dismissed this case for lack of standing. We agree and AFFIRM.

---

mootness). *See also Shields L. Grp., LLC v. Stueve Siegel Hanson LLP*, 95 F.4th 1251, 1285 n. 32 (10th Cir. 2024) ("[B]ecause we conclude that the Objecting Firms lack standing, we need not decide whether their challenges to the January 2021 Settlement Order are, in fact, moot.").

No. 23-40629

HAYNES, *Circuit Judge*, dissenting in part; concurring in part:

I conclude that, given the significant events that have occurred since the oral argument, we should remand this case to the district court to determine in the first instance if this case is now moot. If the case is moot, that ends the matter. If it is not moot, then I agree with the majority opinion that the district court correctly determined that it lacked jurisdiction, but I would not reach the standing issue. Instead, I would make that decision on the lack of jurisdiction over the claims as stated by the district court at pages six through eighteen of its opinion.