# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 23, 2026

Lyle W. Cayce
Clerk

_____

No. 24-30661

_____

Kendra Greenwald,

*Plaintiff—Appellee*,

*versus*

Elizabeth Murrill; Chris Eskew; James M. LeBlanc;
Robert P. Hodges,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-2371

_____

Before Southwick, Willett, and Ho, *Circuit Judges*.

Per Curiam:[*]

Kendra Greenwald was convicted of carnal knowledge of a juvenile in Louisiana. As a convicted sex offender, Greenwald must comply with certain registration and notification requirements under Louisiana's Sex Offender Registration and Notification Act (SORNA). But she has failed to comply

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

with SORNA's requirements on numerous occasions and has been arrested seven times by local law enforcement as a result.

Greenwald alleges that she is disabled and that her multiple disabilities "limit her intellectual functioning," rendering her unable to comply with SORNA's myriad requirements. She sued several state and local officials, alleging violations of her constitutional rights and the Americans with Disabilities Act. She seeks an injunction requiring the named state defendants to create a process to assist with her compliance and to prevent her future arrest by the named local officials for her SORNA noncompliance.

After a series of procedural twists, the district court dismissed all claims against the state defendants, except Greenwald's substantive due process claim. The state defendants then filed this interlocutory appeal, contending that Greenwald lacks Article III standing, that her suit cannot proceed under *Ex parte Young*, 209 U.S. 123 (1908), and that her claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

We conclude that Greenwald lacks standing to proceed against the state defendants because her alleged injury is not traceable to these defendants. Greenwald was last arrested in 2017, and she has never been arrested or prosecuted for a SORNA violation by the state defendants.

Accordingly, we reverse the partial denial of the state defendants' motion and dismiss the state defendants for lack of subject matter jurisdiction.

## I.

This is the second time that Kendra Greenwald's case has reached this court. An earlier panel dismissed the state defendants' appeal as moot, after it concluded that Greenwald's amended complaint rendered her initial

complaint a legal nullity, leaving nothing for the defendants to appeal. *See Greenwald v. Murrill*, 2024 WL 1929012 (5th Cir.).

Greenwald was convicted of carnal knowledge of a juvenile over a decade ago, and sentenced to two years of probation. She must comply with the Louisiana Sex Offender Registration and Notification Act (SORNA). That means that, among other things, Greenwald must register in person with local law enforcement, continually update them of any changes to her address and other contact information, and perform certain community notifications.

Because she failed to follow these requirements, Greenwald's probation was short lived. Two months into her probation, she violated SORNA, and was accordingly ordered to serve the remainder of her sentence.

Over the next five years, Greenwald was arrested six times by local law enforcement in Orleans Parish for her noncompliance with SORNA's requirements.

Following her sixth arrest, a state court determined that Greenwald was an "unrestorable incompetent," meaning that she lacked the capacity to undergo trial.

In 2017, Greenwald was arrested by local law enforcement in Jefferson Parish for the seventh and final time, after she again failed to comply with SORNA.

In June 2023, Greenwald filed an amended complaint, which is the operative complaint in this appeal. She named the Mayor of the City of New Orleans and the City's Chief of Police as defendants. She also sued several state defendants, including the Louisiana Attorney General, the Secretary of

the Louisiana Department of Public Safety and Corrections, and the Superintendent and Deputy Superintendent of the Louisiana State Police.

The amended complaint alleges that the state and local defendants' enforcement of SORNA violates her procedural and substantive due process rights under the Fourteenth Amendment, constitutes cruel and unusual punishment under the Eighth Amendment, and violates the Americans with Disabilities Act.

Greenwald alleges that her intellectual disabilities leave her "functionally illiterate," and that it violates her constitutional rights to impose SORNA's requirements and arrest her without providing assistance. As to the state defendants, she seeks injunctive relief "requiring the State to create a process or procedure that provides adequate notice and hearing and allows individuals with disability to challenge SORNA requirements."

The district court dismissed Greenwald's claims against the state defendants, with the exception of her substantive due process claim. The state defendants then filed this appeal.

## II.

This case comes to us in an interlocutory posture. The state defendants appeal the partial denial of their motion to dismiss for lack of subject matter jurisdiction. We typically possess jurisdiction only over "final decisions." 28 U.S.C. § 1291. So Greenwald suggests that we may lack jurisdiction over this appeal. We disagree.

"The Supreme Court has 'repeatedly stressed' that the collateral order doctrine is a 'narrow' exception' that should 'never be allowed to swallow the general rule that a party is entitled to a single appeal.'" *Mi Familia Vota v. Ogg*, 105 F.4th 313, 324 (5th Cir. 2024) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

But the Court has "also 'stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Id.* at 324–25 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

We read the district court's order to deny sovereign immunity. The state defendants raised sovereign immunity before the district court. And although the order focused on Greenwald's Article III standing, it also referenced sovereign immunity, observing that the "standing analysis and *Ex parte Young* analysis [for sovereign immunity] significantly overlap." The order ultimately concluded that Greenwald's "claim for violation of her substantive due process rights survives." As a practical matter, that determination resolved the state defendants' Rule 12(b)(1) objection.

So although the district court's order did "not deny the [state defendants'] motion to dismiss based on an express finding of no immunity . . . the end result is the same" because the state defendants are "still involved in this litigation." *Sherwinski v. Peterson*, 98 F.3d 849, 851 (5th Cir. 1996). *See also McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 416 (5th Cir. 2004) ("the question of state-sovereign immunity is . . . conclusively determined by the denial of a motion to dismiss") (citing *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 n.5 (1993)). After all, "[t]he very object and purpose of the Eleventh Amendment [is] to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Sherwinski*, 98 F.3d at 851. So "the value to the States of their Eleventh Amendment immunity . . . is for the most part lost as litigation proceeds past motion practice." *Id.*

## III.

Although we possess jurisdiction over this interlocutory appeal because of the district court's denial of sovereign immunity, we will decide this appeal based on Article III standing. "[W]here 'we have interlocutory

appellate jurisdiction to review a district court's denial of Eleventh Amendment immunity, we may first determine whether there is federal subject matter jurisdiction over the underlying case.'" *James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023) (quoting *Hosp. House, Inc. v. Gilbert*, 298 F.3d 424, 429 (5th Cir. 2002)).

"We review *de novo* rulings on motions to dismiss for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1), including motions to dismiss for lack of standing.  When ruling on a motion to dismiss for lack of subject-matter jurisdiction, a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *Burnett Specialists v. Cowen*, 140 F.4th 686, 693 (5th Cir. 2025) (footnotes omitted).

As "[t]he party invoking federal jurisdiction," Greenwald "bears the burden of proving that standing exists." *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024).  She "must show that she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (citation omitted).

And "[s]tanding 'is not dispensed in gross.'" *Woodlands Pride, Inc. v. Paxton*, 157 F.4th 775, 782 (5th Cir. 2025) (citations omitted).  So Greenwald "'must demonstrate standing for each claim that [she] press[es] against each defendant, and for each form of relief that [she] seek[s].'" *Id.* (emphasis omitted).

## A.

Greenwald's complaint seeks an injunction against the Louisiana Attorney General, the Secretary of the Louisiana Department of Public Safety and Corrections, and the Superintendent and Deputy Superintendent

of Louisiana State Police. She argues that, if the "State Defendants were enjoined from continuing to exercise their roles to enforce SORNA against [her] despite her inability to comply with its requirements, she would be far less likely to face future arrests."

The district court concluded that Greenwald established standing on this basis. It reasoned that Greenwald's injury would likely be redressed by injunctive relief, because the attorney general's statutory duty to maintain a sexual predator apprehension team (SPAT) and "train local law enforcement on the enforcement of sex offender laws indicates a likelihood that [Greenwald] would be redressed by a decision that enforcement of SORNA against her violates federal law." The district court's order did not address Greenwald's standing to sue the other state defendants.

Even assuming that Greenwald has sufficiently alleged an imminent or ongoing injury in fact, her theory of standing fails because her injuries are not traceable to the state defendants.

To establish traceability, "the plaintiff must show a predictable chain of events leading from the government action to the asserted injury—in other words, that the government action has caused or likely will cause injury in fact to the plaintiff." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024). That inquiry looks to "whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Collins v. Yellen*, 594 U.S. 220, 243 (2021) (citation omitted).

"If a defendant's action causes an injury, enjoining the action . . . will typically redress that injury." *Reule*, 114 F.4th at 368 n.4. But the reverse is often true as well: If a defendant isn't the cause of the injury, it's unlikely that an injunction against that defendant can sufficiently fix the injury. *Cf. Murthy*, 603 U.S. at 59.

7

As with all standing requirements, traceability may not be based on speculation. *See, e.g.*, *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 44 (1976) ("unadorned speculation will not suffice to invoke the federal judicial power").

Applying these standards, Greenwald lacks standing to sue the state defendants. The state defendants have played virtually no role in Greenwald's past prosecution and arrests. Those actions were carried out by local officials. Greenwald hasn't shown that the state defendants assisted in those actions. Her alleged past injuries therefore have minimal predictive value for any future injury at the hands of the state defendants, making it "much harder" to establish traceability. *Murthy*, 603 U.S. at 59. Thus, the traceability of any future injury is only speculative.

## B.

To find standing, the district court relied on the role of the Louisiana Attorney General. But even the attorney general, the state official with the most direct enforcement responsibilities under SORNA, is far removed from the cause of Greenwald's alleged injuries.

Under Louisiana law, the state attorney general doesn't initiate most criminal prosecutions—local district attorneys do. *See* La. Const. art. V, § 26(B). The attorney general "only has the authority to advise and assist in the prosecution of a criminal case upon request of a district attorney, and/or when authorized for cause by a court which would have original jurisdiction." *White Hat v. Landry*, 475 F. Supp. 3d 532, 549 (M.D. La. 2020). *See also* La. Const. art. 4, § 8; *State v. Neyrey*, 341 So. 2d 319, 324 (La. 1976) (although the "attorney general's authority . . . was plenary under the 1921 constitution," "the present constitution gives a district attorney, or his designated assistant, charge of every criminal prosecution in his district").

Absent evidence showing an imminent enforcement risk by the attorney general against Greenwald, that presents a traceability problem. Although "the causation element can be satisfied where 'the defendant's actions produce a "determinative or coercive effect upon the action of someone else,"'" Greenwald has not alleged facts demonstrating that the attorney general or other named state defendants have this effect over the SORNA enforcement of local law enforcement. *Reule*, 114 F.4th at 367 (citations omitted).

So while it's true that the SPAT is authorized to train local law enforcement and "[i]dentify, monitor, arrest, and assist in the prosecution of sexual offenders" who violate SORNA's registration requirements, that has only marginal relevance for showing Greenwald faces an imminent threat of injury from the attorney general. LA. REV. STAT. § 15:552(4). The SPAT has had no past involvement with Greenwald. *See Murthy*, 603 U.S. at 70 ("failure to establish traceability for past harms—which can serve as evidence of expected future harm—'substantially undermines'" standing) (citation omitted).

The SPAT is statutory designated to "focus on repeat sex offenders," not one-time offenders like Greenwald. LA. REV. STAT. § 15:552. To have a chance at satisfying the traceability element of standing, Greenwald would need to offer evidence, for instance, that it's likely she will become a repeat sexual offender imminently or otherwise show that her past injuries were connected to SPAT enforcement. But there's no indication of that. Thus, nothing in the attorney general's role to maintain the SPAT suggests state involvement in Greenwald's past or future arrests sufficient to establish traceability.

For similar reasons, the traceability of Greenwald's injury is even further attenuated for the Louisiana State Police defendants. Greenwald

No. 24-30661

does not allege that she has ever been arrested by any state law enforcement official in the context of SORNA compliance.

Likewise, as to Secretary of the Louisiana Department of Public Safety and Corrections, Greenwald relies only on another speculative chain of causation involving the transmission of SORNA registration information between state officials and local law enforcement.  None of these suffice to establish traceability.

\* \* \*

Because Greenwald lacks standing against the state defendants, we need not address other arguments regarding *Ex parte Young* issues, or the *Heck* bar.  We reverse and dismiss the state defendants for lack of subject matter jurisdiction.